UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| TANIA CHOWDHURY, *et al.*, <br><br> *Plaintiffs.* <br><br> v. <br><br> ANTONY BLINKEN, *in his official capacity as United States Secretary of State*, <br><br> *Defendant.* | Case No. 1:21-cv-1205-RCL |

### MEMORANDUM OPINION

Plaintiffs Tania Chowdhury and Sakif Ahmed filed a complaint and petition for writ of mandamus to compel defendant Secretary of State Antony Blinken to adjudicate Ahmed's immigrant visa application. Compl., ECF No. 1. Plaintiffs, a married couple, allege that the delay in processing Ahmed's immigrant visa application is unreasonable. Compl. ¶ 5. Defendant moves to dismiss for failure to state a claim on which relief can be granted, arguing that the pace of Ahmed's application process is not unreasonable as a matter of law. Def.'s Mot., ECF No. 4. Plaintiffs opposed, ECF No. 5, and defendant replied, ECF No. 6. After reviewing these motions, the complaint, and the facts of this case, this court will **GRANT** defendant's motion to dismiss on both the Administrative Procedure Act claim and a mandamus claim.

### I.   BACKGROUND

A U.S. citizen or legal permanent resident (a "petitioner") who desires to bring his or her foreign national spouse (a "beneficiary") to the United States must first file a Form I-130 with the United States Citizenship and Immigration Services ("USCIS"). *See* 8 U.S.C. § 1154; 8 C.F.R. § 204.1(a)(1). After USCIS verifies that the petitioner is a citizen or legal permanent resident and

1

that a qualifying relationship with the beneficiary exists, the petition is sent to the National Visa Center ("NVC"), the Department of State processing center. 8 C.F.R. § 204.2(a)(3). When the NVC receives a USCIS-approved petition, it must send the beneficiary a welcome letter "notifying the beneficiary of receipt of the petition and advising them what steps, if any, to take in applying for a visa." 9 Foreign Affairs Manual ("FAM") 504.1–2(a)(1). These steps include submitting a DS-260 form. 9 FAM 504.1(b)(2). Once the required steps are finished, the beneficiary is considered "documentarily complete" and "an IV number can be allotted (if necessary) and an [interview] appointment scheduled." 9 FAM 504.1(b). This statutorily required interview is scheduled at an overseas consular post. 22 C.F.R.§ 42.62 (b).

Plaintiff Tania Chowdhury is a permanent legal resident of the United States. Compl. ¶ 3. Seeking to bring her husband Sakif Ahmed, a national of Bangladesh, to the United States, she filed the required I-130 petition on May 10, 2019. *Id.* ¶ 47. USCIS approved her petition and forwarded it to the NVC. *Id.* ¶ 40. Chowdhury received a welcome letter from USCIS on February 26, 2020, and on March 27, 2020, plaintiffs were notified that the NVC had received the approved petition. *Id.* ¶¶ 40, 50. Plaintiffs promptly submitted the necessary forms and fees, including the DS-260, and on August 3, 2020, the NVC notified plaintiffs that it had received all forms necessary. *Id.* ¶ 51. At that point, Ahmed became documentarily complete. But since August 3, 2020, despite Chowdhury sending multiple expedition requests, no interview appointment has been set. *Id.* ¶¶ 51–57.

Because Ahmed is a national of Bangladesh, his interview would be assigned to the United States Embassy in Dhaka. *Id.* ¶ 50; 22 C.F.R. § 42.61. In September 2019, the State Department Office of the Inspector General inspected the Dhaka embassy and found a five-month visa backlog. *Id.* ¶ 48. This backlog was compounded when the State Department suspended visa services at all

United States embassies and consulates due to the COVID-19 pandemic. *See* Suspension of Routine Visa Services, https://travel.state.gov/content/travel/en/News/visas-news/suspension-of-routine-visa-services.html (last visited January 13, 2021).[1] Routine visa services did not resume until four months later, at which point they were offered on a post-by-post basis. *Id*. To this day the Dhaka embassy faces backlogs as a "result of several COVID-19 related delays." *See* Immigrant Visas, https://bd.usembassy.gov/visas/immigrant-visas/ (last visited January 13, 2021). These delays included intermittent nationwide lockdowns in Bangladesh through August 2021. *See* Health/Travel Alert – U.S. Embassy Dhaka, Bangladesh (July 22, 2021), https://bd.usembassy.gov/health-travel-alert-u-s-embassy-dhaka-bangladesh-16/ (last visited January 13, 2021).

It is not only the Dhaka embassy facing significant delays—the shutdowns and limitations at embassies and consulates worldwide led to a significant backlog of cases at the NVC. In January 2020, there were 75,000 pending immigrant visa cases at NVC awaiting interviews; by February 2021, there were 473,000 pending cases. *See* Update on U.S. Immigrant Visa Processing at Embassies and Consulates, https://www.state.gov/briefings-foreign-press-centers/update-on-u-s-immigrant-visa-processing-at-embassies-and-consulates/ (Mar. 9, 2021).

Plaintiffs filed this action on May 3, 2021. They brought two claims: an Administrative Procedure Act ("APA") claim to compel unreasonably delayed agency action and a petition for writ of mandamus to compel the Department of State to act on Ahmed's petition. Compl. ¶¶ 92–116. Defendant moved to dismiss. Def.'s Mot. Plaintiffs opposed that motion, Pls.' Opp., ECF No. 5, and defendant replied, Def.'s Repl., ECF No. 6. This motion is now ripe.

---

[1] Courts may take judicial notice of information that is posted on official public websites of government agencies when evaluating a motion to dismiss. *Markowicz v. Johnson*, 206 F. Supp. 3d 158, 161 n.2 (D.D.C. 2016).

## II.  LEGAL STANDARDS

### A. Motion To Dismiss

To survive a motion to dismiss, a complain must contain sufficient factual matter that, if accepted as true, states "a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible if the plaintiff pleads enough facts to "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While a court must accept the factual allegations in the complaint as true, it is not required to credit legal conclusions. *Id.* When considering a motion to dismiss, a court can "consider only the facts alleged in the complaint, any documents either attached to or incorporated in the complaint and matters of which [it] may take judicial notice." *Dastagir v. Blinken*, No. 1:20-cv-02286 (TNM), 2021 WL 2894645, at *2 (D.D.C. July 9, 2021) (alteration in original) (quoting *Trudeau v. FTC*, 456 F.3d 178, 183 (D.C. Cir. 2006)).

### B. Unreasonable Delay

Both plaintiffs' APA claim and mandamus claim rest on the same theory: that the Department of State unreasonably delayed the adjudication of Ahmed's visa. Compl. ¶¶ 98, 112. The APA commands that "within a reasonable time, each agency shall proceed to conclude a matter presented to it" and permits a reviewing court to "compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 555(b), 706(1). A court evaluating a claim of unreasonable delay must "consider whether the agency's failure to respond is 'so egregious' as to warrant relief." *Tate v. Pompeo*, 513 F. Supp. 3d 132, 147 (D.D.C. 2021) (quoting *Telecomms. Rsch. & Action Ctr v. FCC* ("*TRAC*"), 750 F.3d 70, 79 (D.C. Cir. 1984)). The D.C. Circuit has identified six factors for courts to consider when making this determination:

> (1) the time agencies take to make decisions must be governed by a rule of reason; (2) where Congress has provided a timetable or other

>indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason; (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake; (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority; (5) the court should also take into account the nature and extent of the interests prejudiced by delay; and (6) the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed.

*TRAC*, 750 F.3d at 80 (internal quotations and citations omitted). The standard for unreasonable delay under the Mandamus Act is "identical to the APA standard." *Tate*, 513 F. Supp. 3d at 148 n.7.

### III. DISCUSSION

Plaintiff Ahmed became documentarily complete on August 3, 2020, and filed this action less than a year later on May 4, 2021. Compl. ¶ 51. He and his wife allege that defendant's failure to schedule a consular interview within this time frame is unreasonable. Defendant, on the other hand, argues that plaintiffs have failed to plausibly allege unreasonable delay. Def.'s Mot. 1. Given the unavoidable delays caused by the COVID-19 pandemic, defendant contends that that the eight months they waited before filing this action—or the seventeen total months they have now waited—is reasonable under the *TRAC* factors. Courts in this district have repeatedly held that it is appropriate to grant a motion to dismiss based on the "application of the *TRAC* factors to the factual allegations of a complaint asserting a claim of 'unreasonable delay.'" *Desai v. U.S. Citizenship & Immigr. Servs.*, No. 20-cv-1005 (CKK), 2021 WL 1110737, at *5 (D.D.C. Mar. 22, 2021) (collecting cases). Applying the *TRAC* factors to the allegations in the complaint and judicially noticeable facts, this Court agrees that plaintiffs have failed to plausibly allege the delayed adjudication of Ahmed's application was unreasonable.

A. **First and Second *TRAC* Factors**

The first *TRAC* factor, which commands that the time agencies take to make decisions must be governed by a rule of reason, is "the most important." *In re Core Commc'ns, Inc.*, 531 F.3d 849, 855 (D.C. Cir. 2008). The second *TRAC* factor "provides that the content of such a rule [of reason] may be found in a 'timetable or other indication . . . in the enabling statute.'" *Ctr. for Sci. in the Pub. Int. v. United States Food & Drug Admin.*, 74 F. Supp. 3d 295, 300 (D.D.C. 2014) (quoting *TRAC*, 750 F.2d at 80)). Put together, these factors "get at whether the agency's response time complies with an existing specified schedule and whether it is governed by an identifiable rationale" and whether there is any "rhyme or reason" for the agency's delay. *Ctr. for Sci. in the Pub. Int.*, 74 F. Supp. 3d at 300.

Plaintiffs point to 8 U.S.C. § 1571 to provide a timetable to guide the rule of reason. Pls.' Opp. 8. But while § 1571(b) does state that it "is the sense of Congress that the processing of an immigrant benefit application should be completed no later than 180 days after the initial filing of the application," this language (as plaintiffs acknowledge) is plainly precatory. The same goes for the editorial note accompanying 8 U.S.C. § 1201 that plaintiffs cite. On the contrary, Congress "has given the agencies wide discretion in the area of immigration processing." *Skalka v. Kelly*, 246 F. Supp. 3d 147, 153–54 (D.D.C. 2017).

Lacking a statutory timeline, courts "typically turn to case law as a guide." *Sarlak v. Pompeo*, No. 20-cv-35 (BAH), 2020 WL 3082018, at *6 (D.D.C. June 10, 2020). As case law indicates, a timeline of approximately two years for immigration adjudication is "not unreasonable as a matter of law." *Mohammad v. Blinken*, No. 20-cv-03696 (TNM), 2021 WL 2866058, at *4 (D.D.C. July 8, 2021) (quoting *Bagherian v. Pompeo*, 442 F. Supp. 3d 87, 95 (D.D.C. 2020); *accord Sarlak*, 2020 WL 3082018, at *6 (collecting cases finding that delays of approximately two

years are not unreasonable). Thus, "even if 8 U.S.C. § 1571(b) offered some 'indication of the speed with which [Congress] expects the agency to proceed, the Court's analysis remains the same" considering the district's consensus that two years is not unreasonable. *Mohammad*, 2021 WL 2866058, at *5 (citation omitted).

Beyond case law, the facts further support the notion that defendant's delay is governed by a rule of reason. The issue "cannot be decided in the abstract, by reference to some number of months or years beyond which agency inaction is presumed to be unlawful, but will depend in large part, as we have said, upon the complexity of the task at hand, the significance (and permanence) of the outcome, and the resources available to the agency." *Mashpee Wampanoag Tribal Council, Inc. v. Norton*, 336 F.3d 1094, 1102 (D.C. Cir. 2003). And here, the resources available to defendant undoubtedly suffered from the continuing COVID-19 pandemic. All visa services at U.S. embassies and consulates were suspended worldwide in March 2020. *Dastagir*, 2021 WL 2894645, at *1. Even now, the Dhaka embassy where Ahmed will be interviewed is facing backlogs. *See* Immigrant Visas, https://bd.usembassy.gov/visas/immigrant-visas/ (last visited January 10, 2021). In this context, combined with the case law and the lack of a statutory guideline, this Court finds that *TRAC* factors one and two weigh in defendant's favor.

### B. Fourth *TRAC* Factor

The fourth *TRAC* factor, which asks the Court to consider the effect of expediting delayed action on agency activities of a higher or competing authority, weighs in defendant's favor as well. "Where the agency action sought is one of many similar adjudications that the agency must complete, the court should be even more cautious before intervening." *Skalka,* 246 F. Supp. at 153. As noted above, embassies across the world, including in Dhaka, are facing backlogs. While the

Court "sympathizes with plaintiffs['] concerns," it also notes that "[m]any other individuals are in similarly trying circumstances . . . and defendant[] face[s] challenges in determining how to best deploy scarce resources." *Tate*, 513 F. Supp. 3d at 150. Granting plaintiffs' "requested relief would simply move them ahead in the processing queue to the detriment of other similarly situated visa applicants." *Thakker v. Renaud*, No. 20-cv-1133 (CKK), 2021 WL 1092269, at *7 (D.D.C. Mar. 22, 2021), *appeal dismissed*, No. 21-5079, 2021 WL 3083431 (D.C. Cir. July 14, 2021).

C. Third and Fifth *TRAC* Factors

"The third and fifth factors are often considered together, and require the Court to consider [p]laintiffs' interests, health, and welfare." *Thakker*, 2021 WL 1092269, at *7. These factors weigh in favor of plaintiffs. Plaintiffs have lived as a separated married couple for over two years, "a time frame that has caused significant strain and harm on their family and relationship." Pls.' Opp. at 9. Other courts that have recognized how such a period of separation and the prejudice to plaintiffs' interests in reuniting weighs in plaintiffs' favor. *See Tate*, 513 F. Supp. 3d at 150 (recognizing that the "emotional toll" of separation on the plaintiffs swings the third and fifth *TRAC* factors in their favor); *Didban v. Pompeo*, 435 F. Supp. 3d 168, 177 (D.D.C. 2020) ("Plaintiffs' health and welfare are at stake because the delay in adjudicating Ms. Rostami's waiver application has caused Plaintiffs to endure a prolonged and indefinite separation, thereby forcing them to delay beginning their life as a married couple. Their interests in receiving a decision are undeniably significant."). While defendant argues that advancing Ahmed to the front of the scheduling queue "would simply benefit [him] to the detriment of other non-citizens," such an argument is better considered under the fourth *TRAC* factor. Def.'s Mot. 12. Accordingly, these factors favor plaintiffs.

### D. Sixth *TRAC* Factor

The last *TRAC* factor asks whether the agency has acted in bad faith. But the Circuit has cautioned that a finding of bad faith or impropriety is not necessary to hold that an agency action is unreasonably delayed. *TRAC*, 750 F.2d at 80. In any event, the Court finds that plaintiffs have failed to plausibly allege bad faith here.

Plaintiffs argue that defendant's "refus[al] to be forthcoming about the delay" in scheduling an interview coupled with "not allowing for a transfer to a different embassy serves to show bad faith and an attempt to avoid offering relief." Pls.' Opp. 11. This argument fails for two reasons. First, plaintiffs have failed to allege that they at any point requested a transfer to a different embassy. Second, regulations mandate that an alien applying for a visa "shall make application at the consular office having jurisdiction over the alien's place of residence." 22 C.F.R. § 42.61(a). It is only "as a matter of discretion" that a consular officer may accept an immigrant visa application from an alien who is "neither a resident" nor "physically present." *Id.* Because a decision to accept a transferred application would be a discretionary consular decision, it is unclear how a refusal to transfer could support a claim of bad faith or how this Court could judge that decision in the first place.

Because plaintiffs cannot allege bad faith in the lack of transfer to another consular office and because the mere fact of a delay is insufficient to show impropriety, this factor is accordingly neutral.

### IV. CONCLUSION

Reviewing the *TRAC* factors, this Court finds that defendant's "interests in balancing its own priorities and determining how to allocate scarce resources in a global pandemic," *Tate*, 513 F. Supp. 3d at 150–51, outweigh both plaintiffs' significant familial interests in reuniting and

interests in the immediate adjudication of Ahmed's visa. Defendant is facing a continuing global crisis that halted visa adjudications worldwide. While this Court sympathizes with Chowdhury and Ahmed's troubles in separation, the delays here plainly stem from "resource allocation decisions [that] simply do not lend themselves to judicial reordering of agency priorities." *Dastagir*, 2021 WL 2894645, at *6 (quoting *Milligan v. Pompeo*, 503 F. Supp. 3d 302, 319 (D.D.C. 2020)). This Court concludes that plaintiffs have failed to establish that the delay in scheduling Ahmed's interview and adjudicating his visa application is unreasonable and will **GRANT** defendant's motion to dismiss on both the APA claim and the mandamus claim.

Date: January 14, 2022

_____
Hon. Royce C. Lamberth
United States District Judge